UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **FALUKE OWOEYE,** | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:14-CV-0664 (VLB) |
| | : | |
| v. | : | |
| | : | |
| **STATE OF CONNECTICUT,** | : | |
| **DEPARTMENT OF MENTAL HEALTH** | : | |
| **SERVICES AND ADDICTION SERVICES,** | : | |
| Defendants. | : | March 18, 2016 |

**MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT [Dkt. 24]**

I.     **Introduction**

The Plaintiff, Faluke Owoeye ("Owoeye"), brings this action directly against the State of Connecticut (the "State") and directly against the Connecticut Department of Mental Health and Addiction Service ("DMHAS"), an agency of the State of Connecticut (collectively, the "Defendants") in a four count Complaint alleging: (i) discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count One), (ii) violations of Plaintiff's rights under the Equal Protection and Due Process Clauses of the United States Constitution (Count Two), (iii) violations of Plaintiff's rights under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 et seq. (Count Three), (iv) common law claims of negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED") (Count Four). Among the remedies sought by the Plaintiff are front and back pay and she

asserts that she is entitled to a jury determination of her entitlement to those remedies.

Defendants have moved to dismiss Count One of the Complaint pursuant to Fed. R. Civ. P. 12(b)(5) on the grounds that the summons and Complaint were not served on Defendants until after the 120 day service period provided in Fed. R. Civ. P. 4(m).  [Dkt. 24].  Defendants have also moved to dismiss Counts Two, Three and Four of the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  *Id.*  Plaintiff did not oppose the Motion to Dismiss insofar as it sought dismissal of Counts Two, Three and Four.  [Dkt. 35].

For the reasons that follow, Defendants' Motion to Dismiss is GRANTED IN PART AND DENIED IN PART.  Plaintiff's case may proceed with respect to Count One only.

II.  **Factual Background**

The following facts and allegations are taken from Plaintiff's Complaint. [Dkt. 1].

Plaintiff was employed by DMHAS as a Registered Nurse serving in the Neuro Research Unit of the Connecticut Mental Health Center ("CMHC") from on or about March 2012 through September 17, 2012.  [Id. ¶¶ 14, 16, 60].  Plaintiff describes herself as a black, African female, states that she was born in Nigeria, and states that Yoruba, and not English, is her first language.  [Id. ¶ 10].

Plaintiff alleges that her co-workers and her immediate supervisor were hostile to her when she started in her position and expressed dissatisfaction with her hiring.  [Id. ¶¶ 21-22]. Specifically, Plaintiff's supervisor is alleged to have

told her that people could not understand her because of her accent, and that the job the plaintiff was doing was "not for [her]" and that the plaintiff did not "fit in". [Id. ¶ 23]. Plaintiff's supervisor and coworkers are repeatedly alleged to have gotten angry with the plaintiff on the one hand when she tried to ask questions, but on the other hand to have criticized her job performance when she did not understand what to do. [Id. ¶¶ 22, 26, 28, 31-37]. Her supervisor allegedly rebuked Plaintiff openly in the presence of other staff and suggested that the plaintiff did not know how to do her job. [Id. ¶ 24]. Plaintiff also alleges that her supervisor condescendingly forced her to re-take medical and administrative examinations that she had already passed in order to become a registered nurse. [Id. ¶¶ 47-50].

Plaintiff complained directly to DMHAS about the conduct she alleges on the part of her coworkers and supervisor in the form of letters filed on May 20, 2012 and September 3, 2012. [Id. ¶¶ 42, 59]. DMHAS thereafter terminated Plaintiff's employment on September 17, 2012.

Plaintiff alleges that she has received a Notice of Right To Sue letter from the United States Equal Employment Opportunity Commission ("EEOC"), and a Release of Jurisdiction from the Connecticut Commission on Human Rights and Opportunities ("CHRO"). [Id. ¶ 62]. Plaintiff subsequently commenced the instant civil action on May 9, 2014. [Dkt. 1]. However, Plaintiff's attorney, William Palmieri, failed to request issuance of a summons and to effect service on the Defendants within 120 days, as required by Fed. R. Civ. P. 4(m). Plaintiff moved for an extension of time to complete service of process, claiming that a medical

condition prevented attorney Palmieri from meeting applicable deadlines. [Dkt. 11]. The motion was denied. [Dkt. 12]. Plaintiff thereafter moved to dismiss the case without prejudice to re-filing. [Dkt. 13]. The Court declined to dismiss the case and instead ordered that service be completed within a specific time pursuant to Rule 4(m), giving the Plaintiff until May 11, 2015 to complete service.

Defendants then moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6), citing, among other arguments for dismissal, Plaintiff's late service of the Complaint. [Dkt. 24]. Plaintiff's attorney, Palmieri, initially requested an extension of time until August 24, 2015 to respond to the motion. [Dkt. 27]. One week after the Plaintiff's requested deadline had passed, Palmieri filed an opposition "brief" and a motion for leave to file *nunc pro tunc*. [Dkt. 35]. As is customary with legal memoranda filed by Palmieri, the opposition memorandum was composed of thirteen pages, the first eleven of which were simply the Plaintiff's entire Complaint, 'copied and pasted' verbatim. *Id.* The document contained no citation to any legal authority and objected only to the dismissal of Count One of the Complaint. *Id.* Attorney Palmieri later appeared before the Court for his repeated failure to produce timely discovery, contrary to multiple Orders of this Court resulting in a Motion to Compel [Dkt. 40, Dkt. 45] and a Motion to Dismiss the case [Dkt. 43] as a sanction pursuant to Fed. R. Civ. P. 37(b) and 41(b). [Dkt. 50].

III. **Standard of Review**

    a. **Failure to State a Claim, Fed. R. Civ. P. 12(b)(6)**

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting Iqbal, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting Iqbal, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

## IV.     Discussion

In her opposition to the subject motion Plaintiff states that she "objects in part to the Motion to Dismiss." In specifying the extent of her objection, Plaintiff states: "[t]he plaintiff objects to the dismissal of Count One of the plaintiff's Complaint." Accordingly Plaintiff concedes to the dismissal that Counts Two through Four of her Complaint and waives and challenge to the dismissal of her claims alleging Due Process and Equal Protection violations, violations of CFEPA and common law claims of either negligent or intentional infliction of emotional distress.

In any event, the court may deem the claims abandoned. *See* Local Rule 7(a)(1)(stating that "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion."); *McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 143-44 (E.D.N.Y. 2014)(noting that "courts in this circuit have held that '[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims); *Marrow v. Amato*, No. CIV. 3:07CV401 (PCD), 2009 WL 350601, at *7 (D. Conn. Feb. 12, 2009)(Plaintiff abandoned claim by "failing to provide any response to [the Defendant's argument in its Motion] . . . or to address [the] claim in any manner."); *Coger v. Connecticut*, 309 F.Supp.2d 274, 280 (D.Conn.2004) (the court can consider a §

1981 claim abandoned merely because the plaintiff failed to respond to the defendant's argument in favor of summary judgment).

If Plaintiff intended neither to withdraw or abandon the claims the claims would be dismissed for the reasons ably argued by the State in its Motion to Dismiss.  This is because these claims were so patently unsustainable that the Court strongly doubts whether Palmieri, in violation of his duty to sign non-frivolous pleadings under Fed. R. Civ. P. 119(b)(2), could have made any good faith attempt to ascertain whether "the claims, defenses, and other legal contentions" asserted in Plaintiff's Complaint were "warranted by existing law." Fed. R. Civ. P. 119(b)(2)

The Eleventh Amendment "provides immunity for states against suits in federal court."  *Gibson v. State of Connecticut Judicial Dep't*, No. 3:05-CV-1396 (JCH), 2006 WL 1438486, at *2 (D. Conn. May 23, 2006), *citing Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).  "A state may be subject to suit in federal court one of two ways (1) Congress can divest a state of immunity through statutory enactment, as it has done with Title VII; or (2) a state may waive its immunity and agree to be sued in federal court." *Sanchez v. Univ. of Conn. Health Ctr.*, 292 F.Supp.2d 385, 392 (D. Conn.2003).

Plaintiff has not identified either a waiver or a Congressional abrogation of the State's Eleventh Amendment immunity from suit in federal court with respect to the Due Process and/or Equal Protection claim asserted in Court Two of the Complaint.  To the extent Plaintiff wished to assert those claims via 42 U.S.C. § 1983, such claims cannot be brought against a State or state agencies.  *See*

*Gibson*, 2006 WL 1438486, at *2 n.1 (D. Conn. May 23, 2006) ("[T]o the extent that the plaintiff's Complaint may be read to assert due process and equal protection claims against the defendant pursuant to 42 U.S.C. § 1983, those claims would also be barred by the Eleventh Amendment."), *citing Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

With respect to Plaintiff's CFEPA claims in Count Three, it is well-established that the State of Connecticut has not waived its Eleventh Amendment immunity from CFEPA suits in federal court. *See, e.g., Turner v. Eastconn Reg'l Educ. Serv. Ctr.*, No. 3:12-CV-788 (VLB), 2013 WL 1092907, at *15 (D. Conn. Mar. 15, 2013); *Dragon v. Connecticut*, No. 3:14-CV-0749 MPS, 2014 WL 6633070, at *3 (D. Conn. Nov. 21, 2014) (Shea, J.); *Wagner v. Conn. Dept. of Corr.*, 599 F. Supp. 2d 229, 237 (D. Conn. 2009) (Droney, J.); *see also Walker v. Conn.*, 106 F.Supp. 2d 364 (D. Conn. 2000) (Burns, J.) (noting that "the wording of [CFEPA] . . . is the antithesis of the clear declaration mandated by *Great Northern*" that the State has waived immunity).

The Eleventh Amendment similarly bars Plaintiff's state law claims for infliction of emotional distress. *Dragon*, 2014 WL 6633070, at *3 (IIED claim barred by Eleventh Amendment immunity). Indeed, Courts in this district have already dismissed similar IIED claims against DMHAS due to sovereign immunity. *See, e.g., Volpe v. Connecticut Dep't of Mental Health & Addiction Servs.*, No. 3:13-CV-1796 CSH, 2015 WL 418149, at *8 (D. Conn. Jan. 30, 2015) (Eleventh Amendment required dismissal of claim of intentional infliction of emotional distress against DMHAS)

**Defendant's Motion to Dismiss is GRANTED as to the unopposed portion of the Motion seeking dismissal of Plaintiff's Equal Protection, Due Process, CFEPA and common law claims.  Counts Two, Three and Four of the Complaint are DISMISSED.**

**Defendants' sole argument in support of dismissal of Plaintiff's Title VII claim (Count One) is that Defendants have been prejudiced by the late service of the Complaint in the instant matter and the Court should exercise its discretion to dismiss the case, notwithstanding the Court's prior Order permitting late service of process on the Defendants.  [Dkt. 24-1, Defs.' Mem. at 8].  Defendants note that a plaintiff must bring a Title VII claim within 90 days of the issuance of a CHRO Release of Jurisdiction or an EEOC or DOJ Notice of Right to Sue Letter.  *See, e.g.*, *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 213-14 (2d Cir. 2006).  Although the limitations period is tolled during the 120 day window for service of process provided in Fed. R. Civ. P. 4(m), that period expired in the instant case on September 8, 2014.  Defendants were not served until May 11, 2015.  Defendants thus argue that they would be prejudiced in defending a time-barred claim, and that "the two key DMHAS employees who are at the center of Plaintiff's claims retired from DMHAS."  [Dkt. 24-1, Defs.' Mem. at 8].**

**Factors courts have considered in determining whether to grant a request for an extension of time to effectuate service include whether: "(1) the statute of limitations would prevent plaintiff from refiling, effectively converting the dismissal to dismissal with prejudice; (2) the defendant had actual notice of the claims prior to being served; (3) the defendant tried to conceal the defect in**

service; and (4) the defendant will be prejudiced if an extension is granted." *John v. City of Bridgeport*, 309 F.R.D. 149, 154 (D. Conn. 2015). In cases where, as here, a dismissal without prejudice due to failure to timely serve process would result in a dismissal with prejudice because the underlying claims would be time-barred, the Second Circuit has provided that the court must carefully "weigh[ ] the impact that a dismissal or extension would have on the parties." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007).

In the instant case, Plaintiff's counsel, attorney Palmieri, purported to serve process on the Defendants in a timely manner by mailing waiver-of-service forms to the state. The manner in which process is served is prescribed by law. In particular, the Federal Rules of Civil Procedure and the laws of the state of Connecticut. Fed. R. Civ. P. 4(j)(2) and Conn. Gen. Stat. Sec. 52–64,. Waiver of service is prescribed by the Federal rules for service of individuals, corporations and associations subject to service under Fed.R.Civ.P. 4(e), (f) and (h. This court has had occasion to inform attorney Palmieri of this fact in the past. *See e.g., Soules v. State*, No. 3:14-CV-1045 (VLB), 2015 WL 5797014, at *6 (D. Conn. Sept. 30, 2015) (Palmieri's "attempt to serve the State Defendants by mailing a waiver of service form disregarded both Fed. R. Civ. P. 4(j)(2) and Conn. Gen. Stat. Sec. 52–64, which require that service be left with or sent to, via certified mail, the Attorney General, in Hartford, CT."). Palmieri's mailed waiver forms and alleged illness do not provide "good cause" for failure to comply with the deadlines set forth in the Federal Rules and were not a "reasonable attempt" to comply with those rules. *See, e.g., Gibbs v. Imagimed*, LLC, No. 11 Civ. 2949(ER), 2013 WL

2372265, at *2 (S.D.N.Y. May 30, 2013) (no good cause where counsel asserted that he was preoccupied with the care of his sick wife and two daughters); *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt.*, L.P., 197 F.R.D. 104, 108 (S.D.N.Y. 2000) (waiver of service request was not a reasonable effort to complete service).  Nonetheless, Defendants acknowledge that they had actual notice of the Plaintiff's claims and received a copy of the Complaint.  [Defs.' Mem. at 8].

Palmieri's assertion that he was unable to properly and timely serve process because he was too ill to prosecute this case is suspicious.  In fact, Publicly-available court records suggest a lack of candor with this tribunal, as attorney Palmieri was actively litigating in this court during his avowed incapacity.  In particular, between May 19, 2014 and April 9, 2015 when Palmieri motion for an extension of time to serve the Defendants, professing that illness disabled him from having done so, Palmieri filed ten (10) new cases in the District Court for the District of Connecticut alone.

Although Defendants will be prejudiced in having to defend a time-barred claim, that outcome will harm a defendant every time such an extension is granted, and the Court must weigh this result against the significant prejudice to the Plaintiff of a dismissal that will deny her an opportunity for a resolution of her case on the merits.  *John v. City of Bridgeport*, 309 F.R.D. 149, 156 (D. Conn. 2015) ("although a defendant forced to defend against an old claim may suffer some prejudice, a plaintiff who is barred from suing through no real fault of her own suffers a great deal more prejudice . . . Ms. John should not lose all or even some of her claims because counsel erred.").  The Court is similarly unpersuaded

that the eight month delay has caused prejudice in the form of the two employee retirements – there is no evidence that these retirements would not still have occurred prior to dispositive motions and/or trial in the instant matter regardless of the eight month delay. Nor have Defendants shown that the retirement of these individuals would materially impede their defense of the case.  Weighing the equities between the parties and seeking not to penalize a litigant because of the dilatory conduct of her attorney, albeit apparently inexcusable, the court finds that the equities weigh in favor of the Plaintiff. Defendants' Motion to Dismiss is DENIED as to Count One.

### Back Pay and Fromt Pay and Punitive Damages.

Defendants assert that that Plaintiff's claims for back pay, front pay and punitive damages should not go to the jury because they are equitable claims. *See Perez v. State of Connecticut Department of Correction*, No. 3:13-CV-150 (JCH), 2013 WL 4760955, at *7 (D. Conn. Sept. 4, 2013); *Ettinger v. State University of New York State College of Optometry, et al.*, No. 95 Civ. 9893, 1998 WL 91089 (S.D . N.Y. March 2, 1998).  In response, Attorney Palmeri states:

> The defendants' Motion as to punitive damages and jury trial are similarly without merit. It is beyond cavil that Title VII applies to states and state agencies. The defendant cites only to two, unreported district level decisions. No Second Circuit ruling or reported decision supports the position of the defendants

As the Defendants correctly state in their reply brief, Attorney Palmeri's assertion has been poorly-researched.  See *Broadnax v. City of New Haven*, 415 F.3d 265 (2d Cir. 2005) ("Because a lost wages award-whether in the form of back pay or front pay-is an equitable remedy, a party is generally not entitled to a jury

determination on the question."); T*SE v. UBS Financial Services, Inc.,* 568 F.Supp.2d 274 (SDNY 2008). Accordingly, the Plaintiff's claims for front pay, back pay and punitive damages will be decided by the Court if Count One goes to the jury.

V.  **Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss [Dkt. 24] is GRANTED IN PART and DENIED IN PART.  Count Two, Three and Four of the Complaint are DISMISSED.  Plaintiff's case may proceed with respect to her Title VII claim (Count One) ONLY.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 18, 2016